**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOODMAN NETWORKS INCORPORATED, *et al.*,[1] | ) | Case No. 17-31575 (MI) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
(A) AUTHORIZING THE DEBTORS TO PAY ACCOUNTS PAYABLE CLAIMS IN
THE ORDINARY COURSE OF BUSINESS, (B) GRANTING ADMINISTRATIVE
EXPENSE PRIORITY TO ALL UNDISPUTED OBLIGATIONS ON ACCOUNT OF
OUTSTANDING ORDERS, AND (C) GRANTING RELATED RELIEF**

> **THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.   UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED.  IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.  A HEARING WILL BE HELD ON THIS MATTER FOR MARCH 14, 2017, AT 9:00 A.M. (CT) BEFORE THE HONORABLE MARVIN J. ISGUR, 515 RUSK STREET, COURTROOM 404, HOUSTON, TX, 77002.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Goodman Networks Incorporated (9460); Goodman Networks Services, LLC (8389); and Multiband Field Services, Inc. (1746).  The location of the Debtors' service address is 2801 Network Blvd., Suite 300, Frisco, Texas 75034.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

**Relief Requested**

1.      By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing, but not directing, the Debtors to continue paying allowed prepetition claims (collectively, the "Accounts Payable Claims") of certain (i) general unsecured creditors and (ii) creditors whose Accounts Payable Claims may give rise to liens under certain state and federal laws (collectively, the "Creditors"), (b) granting administrative expense priority to all undisputed obligations on account of goods ordered by the Debtors prior to the date hereof (the "Petition Date") that will not be delivered until after the Petition Date (the "Outstanding Orders") and authorizing the Debtors to satisfy such obligations in the ordinary course of business, and (c) granting related relief.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief requested herein are sections 105(a), 363(b), and 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(b) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules").

KE 45270473

**Background**[2]

3.      The Debtors are leading providers of installation and maintenance services for satellite communications, professional services and network infrastructure to the telecommunications industry, and field services to the satellite television industry.  The Debtors provide these services through three operating divisions:  (a) field services, which includes onsite installation, upgrade, and maintenance services for satellite television systems; (b) professional services, which includes technical services related to the design and optimization of backhaul and central office equipment of wireless networks; and (c) infrastructure services, which includes services related to the maintenance and decommissioning of wireless and wireline networks. The Debtors are headquartered in Frisco, Texas, and have more than 3,400 employees across thirty-five offices in the United States.

4.      The Debtors commenced these chapter 11 cases to implement the *Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* (the "Plan"), a copy of which has been filed contemporaneously herewith.  The Plan is the result of extensive negotiations between the Debtors, certain holders of the Debtors' 12.125% senior secured notes due 2018 (the "Secured Notes," and holders of such notes, the "Secured Noteholders"), and certain of Debtor Goodman Networks Incorporated's ("Goodman") shareholders.  On January 24, 2017, noteholders holding approximately 75 percent of the Secured Notes and shareholders holding over 80 percent of Goodman common stock agreed on the terms of a comprehensive balance-sheet restructuring, which support is documented in a restructuring support and forbearance agreement (as amended,

---

[2]     The facts and circumstances supporting this Motion are set forth in the *Declaration of John Debus, Interim Chief Financial Officer of Goodman Networks Incorporated, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.

3

the "RSA") pursuant to which such parties agreed to vote in favor of, and otherwise support, the Plan.

5.     The Plan contemplates substantial recoveries to the Secured Noteholders and Goodman shareholders, including a combination of cash, new secured notes, payment-in-kind preferred stock, and common stock for the Secured Noteholders, and a notable percentage of the common stock for the Goodman shareholders.  Importantly, the Plan also contemplates that allowed general unsecured claims will remain unimpaired and "ride through" these chapter 11 cases.  Implementation of the restructuring transactions contemplated by the Plan will enable the Debtors to de-lever their balance sheet by approximately $212.5 million—*over 65%* of their funded debt obligations—and position their businesses for stability and success after emergence from bankruptcy.

6.     Prior to the date hereof (the "Petition Date"), the Debtors commenced the solicitation of votes by the Secured Noteholders and Goodman shareholders, the only voting classes under the Plan.  The Debtors have proposed April 3, 2017, at 4:00 p.m., prevailing Central Time, as the deadline for parties to vote to accept or reject the Plan.

7.     On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have concurrently filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  As of the date hereof, no party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no committee has been appointed under section 1102 of the Bankruptcy Code.

KE 45270473

## The Debtors' Business Obligations

**I.      The Accounts Payable Claims.**

8.      The Creditors provide the Debtors with goods and services in the ordinary course of business, including, among other things:  (a) inventory, materials, and fleet services critical to the Debtors' operations; (b) information technology; (c) financial services; (d) leases of property and equipment;  (e) maintenance  and  repair  services;  (f) legal  and  professional  services; (g) shipping  and  freight  services;  (h) human  resources  services;  (i) utilities;  and  (j) other  basic business necessities for the operation of the Debtors' businesses.  In addition, the Debtors incur numerous fixed, liquidated, and undisputed payment obligations to the Creditors in the ordinary course  of  business  related  to  these  goods  and  services,  which  payment  obligations  averaged approximately $23.4 million in the aggregate per month for the 2016 calendar year.  As of the Petition Date, the Debtors' estimate that there are approximately $27.3 million of accrued and unpaid Accounts Payable Claims.[3]

9.      The Accounts Payable Claims are necessary to the Debtors' business operations. Approximately $6.5 million is related to the materials the Debtors use to complete projects for their customers, maintain their fleet of vans and other vehicles to service their customers' cell towers  and  other  projects,  pay  utilities,  and  other  similar  mission  critical  costs.   Another approximately $2.8 million is related to professional services provided to the Debtors, including financial, legal, human resources, and information technology services, property and equipment lease  payments,  and  shipping  and  freight  services  necessary  to  the  Debtors'  day-to-day operations.  The failure to make payments to cover these costs could result in disruptions in the

---

[3]   Contemporaneously  with  the  filing  of  this  Motion,  the  Debtors  have  filed  certain  other  "first  day"  motions seeking  authority  to  satisfy  certain  prepetition  claims.   This  Motion  is  not  duplicative  of  any  such  motion.   As used herein, the term "Accounts Payable Claims" includes no obligation the Debtors seek to pay under separate motion.  Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors or a waiver of the Debtors' rights to dispute any asserted claim.

KE 45270473

Debtors' business operations, which could have a negative impact on their reputation with their customers. In addition, approximately $6 million is for payments to the Debtors' subcontractors used on various work assignments. The failure to pay such subcontractors could result in those subcontractors asserting mechanic's liens on the Debtors' customers' property.

10.     In certain instances, the Debtors are also quickly reimbursed for paying obligations for Accounts Payable Claims (the "Reimbursable Inventory Costs"). For instance, approximately $12 million of the accrued and unpaid Accounts Payable Amounts are for DIRECTV equipment that the Debtors purchase for use in various work assignments for DIRECTV, and for which the Debtors are subsequently reimbursed at cost by DIRECTV upon completion of these work assignments. Thus, these payments are neutral to the Debtors' balance sheet as the Debtors are quickly reimbursed for them.

11.     Accordingly, by this Motion, the Debtors seek authority to continue to make payments of all undisputed Accounts Payable Claims in the ordinary course of business as they come due.

## II.     The Outstanding Orders.

12.     Prior to the Petition Date, and in the ordinary course of business, the Debtors may have ordered goods that will not be delivered until after the Petition Date (the "Outstanding Orders"). In the mistaken belief that they would be general unsecured creditors of the Debtors' estates with respect to such goods, certain suppliers may refuse to ship or transport such goods (or may recall such shipments) with respect to such Outstanding Orders unless the Debtors issue substitute purchase orders postpetition—potentially disrupting the Debtors' ongoing business operations and requiring the Debtors' to expend substantial time and effort in issuing such substitute orders. As set forth in greater detail below, because the Outstanding Orders are administrative expenses of the Debtors' estates, the Debtors are

6

requesting that the Court confirm the administrative expense priority of the Outstanding Orders and authorize the Debtors to pay amounts due on account of Outstanding Orders but only in the ordinary course of business.

## Basis for Relief

I.      **Payment of the Accounts Payable Claims Is Warranted Under 363(b)(1) of the Bankruptcy Code.**

13.      Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).  In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'"  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).  Moreover, under section 105(a) of the Bankruptcy Code, "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code."  11 U.S.C. § 105(a); *see also In re CoServ, L.L.C.*, 273 B.R. at 497 (finding that sections 105 and 1107 of the Bankruptcy Code provide the authority for a debtor in possession to pay prepetition claims); *In re CEI Roofing, Inc.*, 315 B.R. at 56; *In re Mirant Corp.*, 296 B.R. 427 (Bankr. N.D. Tex. 2003).   The above-referenced sections of the Bankruptcy Code therefore authorize the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here.  *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of

7

the [Bankruptcy] Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate.").

14.     The Debtors respectfully submit that the relief requested herein is in the best interest of their estates, creditors, equityholders, and other parties in interest.  As an initial matter, approximately $12 million of the Accounts Payable Claims consist of the Reimbursable Inventory Costs, for which the Debtors expect to be fully reimbursed in the ordinary course of business, and these amounts have no long term impact on the Debtors' balance sheet.

15.     A significant portion of the Accounts Payable Claims is held by vendors.  Certain of the Debtors' vendors are either the sole source or one of a handful of sources able to provide the good or service used by the Debtors in their business operations, and thus ensuring continuity of access to the goods and services provided by such vendors is key to the Debtors' continued operational stability.  Moreover, many of the Debtors' vendors are not parties to contracts with the Debtors.  Such vendors therefore could refuse to continue selling goods and services to the Debtors in the event of a default in payment of their Accounts Payable Claims.  Thus, payment of the Accounts Payable Claims as set forth herein in the ordinary course of business will minimize any potential disruptions to the Debtors' postpetition operations by ensuring their vendors remain in place and continue to deliver goods to the Debtors on a regularly and timely basis.

16.     Just as importantly, the relief requested herein goes to the timing of payment, not whether such payments will ultimately be made to creditors under the Debtors' Plan construct.  As set forth above, the Plan provides for payment in full of all allowed obligations to general unsecured creditors in the ordinary course of business.  *See* Plan Art. III.B.4.  Any Creditors holding "Other Secured Claims" or "Other Priority Claims" (as defined in the Plan) also are

unimpaired under the Plan.  Accordingly, the relief requested herein avoids unnecessary harm to the enterprise by expediting distributions to holders of Accounts Payable Claims that would otherwise be made at a later date under the Plan.  Indeed, the Debtors believe that delaying payment of Accounts Payable Claims beyond normal practices could seriously damage their going concern value by undermining the "business as usual" message that serves as a cornerstone to these chapter 11 cases.  Any such delay also may cause the loss of favorable payment terms when negotiating upcoming contract renewals and future orders with important vendors or, worse, result in the immediate loss of trade credit resulting in a liquidity crisis.  The Debtors believe paying undisputed Accounts Payable Claims as and when they come due will allow the Debtors to continue their operations with minimal disruption and preserve value for the benefit of their estates, creditors, equityholders, and all parties in interest.  Moreover, the ability to continue making ordinary course payments to the Debtors' day-to-day creditors was a key component of the Debtors' prepetition negotiations.  The Debtors believe that the relief requested herein, in light of the prepackaged nature of these chapter 11 cases, is necessary to avoid unnecessary distractions and ensure a timely restructuring process.

17.     Further, payment of certain Accounts Payable Claims complies with the statutory requirements of the Bankruptcy Code.  Specifically, certain Accounts Payable Claims in an aggregate amount of approximately $10 million relate to goods delivered to the Debtors within 20 days of the Petition Date.  Section 503(b)(9) of the Bankruptcy Code provides that such Accounts Payable Claims are administrative expense claims against the applicable Debtor's estate.  The Debtors, therefore, are required to pay such Accounts Payable Claims in full to confirm a plan of reorganization.  *See* 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to priority).  Accordingly, payment of the Accounts Payable Claims that are

entitled to administrative priority will only change the timing of the payment of such Accounts Payable Claims, not the amounts.  *See, e.g.*, *CEI Roofing*, 315 B.R. at 60 ("[T]he payment of prepetition . . . claims . . . that qualify as priority . . . claims . . .  does not trigger the same concerns (i.e., upsetting priorities under the [Bankruptcy] Code and unfair discrimination among general unsecured claims)").

18.     Similarly, certain of the Accounts Payable Claims are held by parties who may be entitled to assert liens on account of any unpaid obligations.  For instance, if any of the Debtors' inventory or materials are in the possession of a third-party shipper, that shipper may be able to assert a lien on the goods in its possession under most state laws.[4]  This lien would secure the charges or expenses incurred in connection with the transportation of such goods.   Under section 362(b)(3) of the Bankruptcy Code, the act of perfecting a statutory lien (to the extent consistent with section 546(b) of the Bankruptcy Code) is expressly excluded from the protections afforded by the automatic stay.  And the Debtors' subcontractors could similarly assert liens against the Debtors' customers' property, negatively impacting the Debtors' relationship with their customers.  Thus, the failure to timely pay Creditors who may be able to assert liens, such as shippers and subcontractors, could unnecessarily disrupt the Debtors' business operations.

19.     Finally, the relief requested by this Motion will not negatively affect any parties in interest.  The Secured Noteholders—who comprise the Debtors' secured first lien creditors and the only class of *creditors* entitled to vote to accept or reject the Plan—do not object to the

---

[4]     For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that a "carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law."  U.C.C. § 7-307(a) (2003).

requested relief, and have supported the Plan construct that leaves such claims unimpaired.  As noted above, the payments contemplated by this Motion would be paid in any event upon consummation of the Plan, and will provide value during the pendency of the chapter 11 cases. On the other hand, any material disruption to the Debtors' businesses that may result from nonpayment of the Accounts Payable Claims could threaten the Debtors' ability to consummate their restructuring.  It is thus prudent that the Debtors take any and all reasonable steps necessary to avoid imperiling the restructuring, including paying undisputed Accounts Payable Claims.

20.     Indeed, courts in this and other jurisdictions regularly authorize payments of the kind contemplated herein in similar circumstances.  *See, e.g.*, *In re Forbes Energy Servs. Ltd.*, No. 17-20023 (DRJ) (Bankr. S.D. Tex. Jan. 25, 2017) (authorizing payment of all undisputed claims of certain creditors in prepackaged chapter 11 cases); *In re Stone Energy Corp.*, No. 16-36390 (MI) (Bankr. S.D. Tex. Jan. 10, 2017) (same); *In re Illinois Power Generating Co.*, No. 16-36326 (MI) (Bankr. S.D. Tex. Dec. 12, 2016) (same); *In re Light Tower Rentals, Inc.*, No. 16-34284 (DRJ) (Bankr. S.D. Tex. Sept. 2, 2016) (same); *In re Southcross Holdings LP*, No. 16-20111 (MI) (Bankr. S.D. Tex. Apr. 11, 2016) (same).[5]

## II.     The Court Should Confirm that Outstanding Orders Are Administrative Expense Priority Claims and that Payment of Such Claims Is Authorized.

21.     Pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of goods and services, including goods ordered prepetition, are in fact administrative expense priority claims because they benefit the estate postpetition.  *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses); *see also In re John Clay & Co.*,

---

[5]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

KE 45270473

43 B.R. 797, 809–10 (Bankr. D. Utah 1984) (holding that goods ordered prepetition but delivered postpetition are entitled to administrative priority). Thus, the granting of the relief sought herein with respect to the Outstanding Orders will not afford such claimants any greater priority than they otherwise would have if the relief requested herein were not granted, and will not prejudice any other party in interest.

22.     Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide certain suppliers with assurance of such administrative priority. The attendant disruption to the continuous and timely flow of critical raw materials and other goods to the Debtors would force the Debtors to potentially halt operations and production, disrupt the Debtors' business, and lead to a loss of revenue, all to the detriment of the Debtors and their creditors. Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Orders and should authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized.**

23.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Accounts Payable Claims. Accordingly, the Debtors believe there is minimal risk that checks or wire transfer requests that the Court has not authorized will be inadvertently made. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## Emergency Consideration

24.     Pursuant to Local Rule 9013-1, the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

25.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

26.     Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as (a) an admission as to the validity of any prepetition claim against a Debtor entity, (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in this

KE 45270473

Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

### Notice

27.     The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) Wells Fargo Bank, N.A., as indenture trustee for the Secured Notes, and counsel thereto; (d) U.S. Bank National Association, as collateral trustee under the Debtors' collateral trust agreement with their Secured Noteholders; (e) counsel to the ad hoc group of Secured Noteholders; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the office of the attorney general for each state in which the Debtors operate; (i) the Securities and Exchange Commission; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

28.     No prior request for the relief sought in this Motion has been made to this or any other court.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

KE 45270473

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Houston, Texas
Dated:   March 13, 2017

*/s/ Stephen M. Pezanosky*

Stephen M. Pezanosky (TX Bar No. 15881850)
J. Frasher Murphy (TX Bar No. 24013214)
Matthew T. Ferris (TX Bar No. 24045870)
**HAYNES AND BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone:     (214) 651-5000
Facsimile:     (214) 651-5940
Email:           stephen.pezanosky@haynesboone.com
                    frasher.murphy@haynesboone.com
                    matt.ferris@haynesboone.com

-and-

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Joseph M. Graham (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:           patrick.nash@kirkland.com
                    joe.graham@kirkland.com

-and-

Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Alexander N. Cross (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:           joshua.sussberg@kirkland.com
                    alex.cross@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

KE 45270473

## **Certificate of Service**

I certify that on March 13, 2017, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Stephen M. Pezanosky
One of its Counsel